MEMORANDUM
 

 LOWELL A. REED, Jr., Senior District Judge.
 

 Defendant National Railroad Passenger Corporation has filed a motion for summary judgment in the two above-captioned matters, which sound in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., the Federal Employers’ Liability Act; 45 U.S.C. §§ 51, et seq., and Pennsylvania tort law. Upon consideration of defendant’s motion (Document No. 17 in Case No. 98-3421), plaintiff’s response (Document No. 19 in Case No. 98-3421), the memoranda submitted therewith, and the evidence, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the motion will be granted.
 

 I. BACKGROUND
 

 Plaintiff Martha Allen had worked for defendant National Railroad Passenger Corporation (“Amtrak”) for 14 years without incident. An electrician by trade, Allen was employed at Amtrak’s Wilmington Maintenance Facilities in Delaware. The job seemed to be going well for Allen, but that changed when Larry Platt arrived.
 

 In February 1996, Platt became a foreman at the Wilmington Maintenance Facilities, and his shift overlapped with Allen’s for one hour each day. (Plaintiffs Response in Opposition to Defendant’s Motion for Summary Judgment, Exhibit A, Deposition of Martha Allen, Dec. 30, 1998,
 
 *606
 
 at 93) (“Allen Deposition I”). About two or three weeks after he started his job, Platt began to behave oddly toward Allen. When Allen would go to punch out at the end of the day, Platt would be waiting for her. He would snatch up her time card before she could reach it and taunt her, offer the card to her and then pull it away, and touch her hand as she reached for her card.
 
 (Id.
 
 at 30). He did this “every day” for approximately two months.
 
 (Id.
 
 at 31). Eventually, in April 1996, Allen complained about Platt’s behavior to her foreman, Ed Heath, who apparently reported the behavior to management officials.
 
 (Id.
 
 at 71-72). The time card behavior ceased immediately following Allen’s discussion with Heath.
 
 (Id.
 
 at 79).
 

 Platt’s conduct generally took on a more subtle, but no less peculiar, form after Platt’s time-card related complaint to her foreman. Platt began to “glare” at Allen (Allen Deposition I, at 79), “watch” her, and follow her around the workplace.
 
 (Id.
 
 at 114, 117). Allen would go to the bathroom and emerge to find Platt waiting outside.
 
 (Id.
 
 at 114). Allen testified that this behavior was “scarier” to her than the time card conduct.
 
 (Id.).
 
 Allen told her union representative about Platt’s following and staring, but did not report it to her foreman or any other Amtrak official at that time.
 
 (Id.
 
 at 117-19).
 

 In April 1996, Platt briefly touched or rubbed Allen’s ear while she was speaking with a co-worker. (Allen Deposition I, at 87). A week and a half later, Allen reported this incident to her foreman, Heath. (Allen Deposition I, at 102); Plaintiff’s Response in Opposition to Defendant’s Motion for Summary Judgment, Exhibit A, Deposition of Martha Allen, Feb. 5, 1999, at 45 (“Allen Deposition II”).
 

 At some point in April 1996, Allen and another woman who had complained of harassment by Platt in 1988 met with Amtrak official Christina Marks to report Platt’s conduct. (Allen Deposition I, at 159). Allen then met with Amtrak plant manager Jim Weisinger, who suggested that he might “take [Platt] out of service” or suspend him.
 
 (Id.
 
 at 178). Allen responded that she did not want Platt to be taken out of service or fired.
 
 (Id.
 
 at 179; Allen Deposition II, at 56).
 

 Allen’s complaint triggered an investigation by Amtrak’s Equal Employment Opportunity representative, Sheila Davidson. (Allen Deposition II, at 57; Defendant’s Memorandum in Support of Motion for Summary Judgment, Tab 2, Declaration of Sheila Davidson, at ¶ 6) (“Davidson Declaration”). Davidson interviewed Allen and Platt, as well as other women who were rumored to have been harassed by Platt. (Allen Deposition II, at 61-62; Davidson Declaration, at ¶ 7, 8, 9). Based upon her investigation, Davidson concluded that there were insufficient grounds to formally charge Platt, as much of the complained-of conduct had occurred at least four years earlier. (Plaintiffs Response in Opposition to Defendant’s Motion for Summary Judgment, Exhibit A, Allen Deposition, Feb. 18, 1999, at 261 (“Allen Deposition III”); Davidson Declaration, at ¶ 10). However, Davidson and Amtrak officials met with Platt, described the complaints that had been received about his conduct, explained Amtrak’s sexual harassment policy to Platt, and warned him that he would be judged by the standards set forth in the policy. (Allen Deposition III, at 262; Davidson Declaration, at ¶ 11).
 
 [1]
 

 In May 1996, Amtrak officials told Allen that Platt (who while a foreman, was not usually Allen’s supervisor during her shift)
 
 [2]
 
 would be her supervisor for one
 
 *607
 
 day. Aware of Allen’s discomfort around Platt, Amtrak officials gave her the day off. (Allen Deposition I, at 84). Allen visited a physician on her day off because of her anxiety regarding Platt, and then, a few days later, she met with a counselor.
 
 (Id.
 
 at 29, 84, 106). Allen took a leave of absence and did not return to work until July 1996.
 

 Platt’s staling and following behavior resumed when Allen returned to work in July 1996. On one occasion, when Platt was following Allen, she entered the women’s locker room. (Allen Deposition III, at 269). Platt banged on the door, and when Allen did not respond, Platt opened the door and walked into the room.
 
 (Id.).
 
 Allen was clothed, sitting on a table.
 
 (Id.).
 
 Platt said nothing, gave Allen “sort of like a smirk and turned around and walked out.”
 
 (Id.
 
 269-70). Allen informed her union representative of this incident, but did not tell any Amtrak officials.
 
 (Id.
 
 at 274). In addition, Allen’s co-workers teased her about Platt, suggesting that he “wanted her.” (Allen Deposition III, at 299).
 
 [3]
 

 Soon after the locker room incident, Allen took another leave of absence from August 1996 to February 1997, and again from May 1998 to November 1998.
 
 [4]
 

 The two separate actions brought by Allen are based
 
 on
 
 the same set of factual circumstances, and therefore both of the actions, No. 98-3421 and No. 99-130, will be considered here together.
 

 II. ANALYSIS
 

 According to Rule 56(c) of the Federal Rules of Civil Procedure, “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law,” then a motion for summary judgment must be granted. The question before the Court at the summary judgment stage is “whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.” See
 
 Anderson v. Liberty Lobby,
 
 477 U.S. 242, 251-52, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court’s role at summary judgment is not to weigh the evidence, but to determine whether there is a genuine issue for trial; that is, an issue upon which a reasonable jury could return a verdict in the non-moving party’s favor.
 
 See id.
 
 at 249, 106 S.Ct. at 2511.
 

 The moving party “bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of ‘the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,’ which it believes demonstrate the absence of a genuine issue of material fact.”
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party must then “go beyond the pleadings and by her own affidavits, or by the ‘depositions, an
 
 *608
 
 swers to interrogatories, and admissions on file,’ designate ‘specific facts showing that there is a genuine issue for trial.”’
 
 Id.
 
 at 324, 106 S.Ct. at 2553.
 

 In deciding whether there is a disputed issue of material fact, the “inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.”
 
 Matsu-shita Elec. Indus. Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting
 
 United States v. Diebold, Inc.,
 
 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).
 

 A. Title VII
 

 A plaintiff seeking to establish employer liability for a sexually hostile work environment must establish the following essential elements:
 

 (1) the employee[] suffered intentional discrimination because of [her] sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination. would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of
 
 respondeat superior
 
 liability.
 

 Kunin v. Sears Roebuck & Co.,
 
 175 F.3d 289, 293 (3d Cir.1999) (quoting
 
 Andrews v. City of Philadelphia,
 
 895 F.2d 1469, 1482 (3d Cir.1990)).
 

 While Allen may be able to establish some or most of. the first four elements,
 
 [5]
 
 her claim fails because she fails to establish that Amtrak’s liability for Platt’s conduct.
 
 See Knabe v. The Boury Corp.,
 
 114 F.3d 407, 411 (3d Cir.1997) (employer liability is' not automatic in hostile work environment cases).
 

 1.
 
 Liability for Supervisory Conduct
 

 An employer will be liable under Title VII when a hostile work environment was (1) created by a “supervisor with immediate (or successively higher) authority over the employee,” and (2) that supervisor took “tangible employment action against the employee” (discharge, demotion, or work assignment).
 
 Faragher v.
 
 
 *609
 

 City of Boca Raton,
 
 524 U.S. 775, 807, 118 S.Ct. 2275, 2292-93, 141 L.Ed.2d 662 (1998);
 
 see also Burlington Industries, Inc. v. Ellerth,
 
 524 U.S. 742, 756, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998). If plaintiff is successful in establishing that the harassment was caused by her supervisor, but fails to show that the supervisor took tangible employment reaction, the employer may raise an affirmative defense by showing that “(a) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.... ”
 
 Durham Life Ins. Co. v. Evans,
 
 166 F.3d 139, 150 (3d Cir.1999) (quoting
 
 Ellerth,
 
 524 U.S. at 756, 118 S.Ct. at 2270).
 

 Neither of the two elements of supervisory liability are present in this case. First, Platt was not “supervisor with immediate (or successively higher) authority over the employee.”
 
 See Faragher,
 
 524 U.S. at 807, 118 S.Ct. at 2292-93. The term “supervisor,” in the context of, hostile work environment claims, indicates a person with the power to hire, fire, set work schedules and wages, or make changes in the work assignments or benefits of the alleged victim.
 
 See Kent v. Henderson,
 
 77 F.Supp.2d 628, 631-632 (E.D.Pa.1999) (citing
 
 Faragher,
 
 524 U.S. at 803, 118 S.Ct. at 2291 and
 
 Ellerth,
 
 524 U.S. at 761, 118 S.Ct. at 2269). Plaintiff has produced no evidence that Platt had the authority to hire her, fire her, set her work schedule, or assign her work. In her deposition testimony, plaintiff acknowledged that Platt, while nominally her supervisor for approximately one hour each day, exercised no supervisory authority over her. (Allen Deposition I, at 52). Plaintiff bears the burden of showing a genuine issue of material fact as to whether the alleged harasser was her supervisor, and I conclude that Allen has not carried that burden.
 
 See Kent,
 
 77 F.Supp.2d at 631-632 (citing
 
 Andrews,
 
 895 F.2d at 1482). Thus, Platt was no more than an employee/co-worker for the purpose of determining employer liability in a hostile work environment claim, and Amtrak is not liable for Platt’s conduct under a supervisory liability theory.
 
 [6]
 

 2.
 
 Liability for Co-Worker Conduct
 

 The Court of Appeals for the Third Circuit has recognized three scenarios in which employers are liable for the harassment of employees by co-employees; (1) when torts were committed by employees in the scope of their employment; (2) when the employer itself was negligent or reckless in failing to discipline, hire, fire, or take remedial action; or (3) when the harassing employee “relied upon apparent authority or was aided by the agency relationship.”
 
 Knabe v. Boury Corp.,
 
 114 F.3d 407, 411 (3d Cir.1997) (quoting
 
 Bouton v. BMW of North America, Inc.,
 
 29 F.3d 103, 106 (3d Cir.1994)).
 
 [7]
 

 Under the first form of employer liability, Allen must show that Platt’s conduct took place in the scope of his employment with Amtrak.
 
 [8]
 
 Conduct in the scope of
 
 *610
 
 employment is defined by the
 
 Restatement (Second) of Agency
 
 § 228:
 

 (1) Conduct of a servant is within the scope of employment if, but only if:
 

 (a) it is of the kind he is employed to perform;
 

 (b) it occurs substantially within the authorized time and space limits;
 

 (c) it is actuated, at least in part, by a purpose to serve the master; and
 

 (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
 

 (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.
 

 Allen has not argued that Platt’s conduct toward Allen was of the kind he was authorized to perform as a foreman for Amtrak. Nor has Allen has made any showing that Platt, in engaging in the complained-of conduct, was “actuated by a purpose” serve Amtrak or to further its business purposes. Rather, the evidence shows at most that Platt was “motivated by reasons personal to himself,” an insufficient basis for a finding that he was acting in the scope of employment.
 
 See Rabon v. Guardsmark, Inc.,
 
 571 F.2d 1277 (4th Cir.),
 
 cert. denied,
 
 439 U.S. 866, 99 S.Ct. 191, 58 L.Ed.2d 176 (1978);
 
 see also Bouton,
 
 29 F.3d at 107 (sexual harassment is outside the scope of employment);
 
 Blankenship v. Parke Care Centers, Inc.,
 
 123 F.3d 868, 872-73 (6th Cir.1997),
 
 cert.
 
 de
 
 nied,
 
 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998);
 
 Fleming v. Boeing Co.,
 
 120 F.3d 242, 246 (11th Cir.1997);
 
 Perry v. Ethan Allen, Inc.,
 
 115 F.3d 143, 149 (2d Cir.1997);
 
 Fitzgerald v. McCutcheon,
 
 270 Pa.Super. 102, 107-410 A.2d 1270, 1272 (1979).
 
 [9]
 

 I conclude that a reasonable jury could not find on the evidence produced by plaintiff that Platt’s conduct was within the scope of his employment with Amtrak. Therefore Amtrak cannot be held responsible under this theory of employer liability.
 

 Under the second form of employer liability, a defendant-employer will be found liable for a hostile work environment caused by a co-worker’s behavior where the employer “knew or should have known of the harassment and failed to take prompt remedial action.”
 
 See Kunin,
 
 175 F.3d at 293-94 (quoting
 
 Andrews,
 
 895 F.2d at 1486 (citations omitted)). Essentially, the inquiry is whether the employer itself was negligent in failing to put a stop to an employee’s harassing behavior.
 
 See Bouton,
 
 29 F.3d at 107. An employer will be deemed to have taken “prompt remedial action” when the employer “effectively stops the harassment” or takes steps that are “reasonably calculated to prevent further harassment.”
 
 Knabe,
 
 114 F.3d at 411 n. 8, 412.
 

 Viewing the evidence in the light most favorable to plaintiff, I conclude that a reasonable jury could not find that Amtrak failed to exercise reasonable care in responding to Allen’s complaints about
 
 *611
 
 Platt’s behavior. According to plaintiffs own deposition testimony, whenever company officials were informed of Allen’s complaints, immediate action ensued that was largely effective at ending the conduct.
 
 See Bouton,
 
 29 F.3d at 107 (“under negligence principles, prompt and effective action by the employer will relieve it of liability”). Allen’s complaints to her foreman resulted in a quick cessation of the time card game. (Allen Deposition I, at 77-80). A subsequent formal complaint by Allen led to an investigation by Amtrak’s Equal Employment Opportunity representative, Sheila Davidson. (Allen Deposition II, at 57). Though Davidson concluded that the evidence against Platt was insufficient to support the filing of formal charges against Platt under his union contract. (Allen Deposition III, at 261; Davidson Declaration, at ¶ 10), Davidson and other Amtrak officials held a meeting with Platt during which he was asked to read Amtrak’s sexual harassment policy and warned that his conduct would be judged by the standards set forth in the policy. (Davidson Declaration, at ¶ 11). Furthermore, Allen chose not to inform Amtrak of some incidences of Platt’s conduct, including the staring and following and the locker room incident, thus failed to avail herself of additional remedial measures Amtrak might have taken. (Allen Deposition I, at 117 19; Allen Deposition III, at 274).
 
 [10]
 
 Given Amtrak’s level of knowledge, its remedial responses to Allen’s complaints were adequate, reasonable, and appropriate, and I conclude that a reasonable jury could not find on the evidence before me that Amtrak was negligent in its responses to Allen’s complaints.
 

 Plaintiff advances a broader argument under the employer negligence theory of liability: she asserts that Amtrak failed to respond adequately to prior complaints about Platt’s behavior from other women and thereby exposed plaintiff to the risk of being harassed by Platt. Plaintiff points to complaints by two other employees pri- or to Allen’s complaint: (1) a 1988 complaint by Dee Salerno, and (2) a complaint by Lorraine Bishop at some point in 1989-91. Plaintiff argues that these two complaints put Amtrak on notice of Platt’s continuing conduct, and that Amtrak allegedly failed to exercise reasonable care in responding to those complaints.
 

 Upon a thorough review of the evidence, I conclude that a reasonable jury could not find that Amtrak “failed to take prompt remedial action” with regard to past incidents of objectionable conduct by Platt.
 
 See Kunin,
 
 175 F.3d at 293-94 (quoting
 
 Andrews,
 
 895 F.2d at 1486).
 
 [11]
 
 The two complaints Amtrak received during the eight years prior to Allen’s complaint caused Amtrak officials to take immediate steps that were reasonably calculated to put an end to Platt’s conduct. In response to Dee Salerno’s complaint in 1988, Amtrak officials met with Platt and explained to him that his behavior was inappropriate, and Salerno shook hands with Platt. (Allen Deposition I, at 65-66). The meeting was apparently effective in curtailing Platt’s conduct toward Salerno in the workplace.
 
 (Id.
 
 at 66). When Lorraine Bishop complained to her foreman and her manager about Platt’s conduct in 1989-91, her manager took immediate action that put a stop to the complained-of conduct.
 
 See Bishop v. National R.R. Passenger Corp.,
 
 66 F.Supp.2d 650, 656-57 (E.D.Pa. 1999).
 
 [12]
 

 
 *612
 
 It also should be noted that following Allen’s complaint and the ensuing investigation, Amtrak received a complaint about Platt’s conduct from another Amtrak employee. Amtrak investigated the allegations, filed formal charges against Platt under his union contract, and ultimately terminated him. (Davidson Declaration, at ¶ 12).
 
 [13]
 

 I conclude that plaintiffs evidence does not present a genuine issue of material fact as to whether Amtrak was negligent in responding to complaints about Platt. Amtrak had received only two complaints about Platt in the eight years prior to Allen’s complaint, and officials had counseled and warned Platt on both occasions. Amtrak took reasonable steps in response to the complaints it received about Platt’s conduct from in 1996, and ultimately terminated Platt in 1997. A reasonable jury, could not conclude on the evidence now before this Court that Amtrak’s conduct in this regard was negligent or that Amtrak failed to take prompt remedial action.
 
 See Bishop,
 
 66 F.Supp.2d at 666-669;
 
 DeCe-sare,
 
 1999 WL 330258, at *5.
 

 Therefore, summary judgment will be granted as to plaintiffs Title VII claim.
 

 B. State Tort Claims
 

 While plaintiff may have produced evidence sufficient to show that Platt committed a battery on her, her claim will not survive summary judgment because she fails to establish Amtrak’s liability for Platt’s conduct. Under Pennsylvania law, an employer may be found hable for an intentional tort committed by an employee only if
 
 respondeat superior
 
 liability exists.
 
 See Butler v. Flo-Ron Vending Co.,
 
 383 Pa.Super. 633, 557 A.2d 730 (1989) (citing
 
 Fitzgerald v. McCutcheon,
 
 270 Pa.Super. 102, 410 A.2d 1270 (1979);
 
 Restatement (Second) of Agency
 
 § 219). Pennsylvania has recognized both the “scope of employment” and “employer negligence” forms of liability.
 
 See Fitzgerald,
 
 270 Pa.Super. at 106, 410 A.2d at 1271-2 (employer is liable for employee conduct in the scope of employment);
 
 Heller v. Patwil Homes, Inc.,
 
 713 A.2d 105, 107 (Pa.Super.1998) (employer is liable for employer’s negligence in hiring, failing to fire, faking to supervise an employee, or permitting tortious employee conduct). I have considered these two forms of employer liabkity in the above analysis of plaintiffs Title VII claim and concluded that plaintiff has not presented enough evidence that a reasonable trier of fact could find Amtrak responsible for Platt’s conduct.
 
 See supra
 
 text pp. 608-12. Summary judgment wkl therefore be granted on Allen’s battery claim under Pennsylvania law.
 

 Likewise, even assuming plaintiff has sufficient evidence to-convince a fair-minded trier that Platt’s conduct constituted intentional or negligent infliction of emotional distress plaintiff has not produced sufficient evidence to demonstrate, as she must, that Amtrak is responsible for Platt’s negligence for the reasons discussed in the above analysis of plaintiffs Title VII and battery claims.
 
 See Costa v. Roxborough Memorial Hosp.,
 
 708 A.2d 490, 493 (Pa.Super.1998);
 
 see also supra
 
 text pp. 611-15.
 

 For the foregoing reasons, defendant’s motion for summary judgment wkl be granted on plaintiffs claims of battery and negligent and intentional infliction of emotional distress under Pennsylvania law.
 

 
 *613
 
 C. FELA
 

 In a separate action that arises out of the same facts as those discussed above, plaintiff seeks recovery under the Federal Employers’ Liability Act (“FELA”), 45 U.S.C. §§ 51, et seq. FELA establishes liability in common carriers by railroad for injuries suffered by employees as a result of employers’ negligence.
 
 [14]
 

 1.
 
 Intentional Torts
 

 Despite the language of FELA, which facially applies only to negligence claims, courts have allowed plaintiffs to seek
 
 recovery
 
 under FELA for intentional torts as well.
 
 See Lancaster v. Norfolk and Western Railway Co.,
 
 773 F.2d 807, 813 (7th Cir.1985) (“the applicability of the FELA to (at least some) intentional torts is too well settled to be questioned any longer”). Allen seeks to recover under FELA on a theory of intentional infliction of emotional distress and battery. Because both battery and intentional infliction of emotional distress are intentional torts, plaintiff also must show that Amtrak was responsible for Platt’s conduct.
 
 See Mullahon v. Union Pacific R.R.,
 
 64 F.3d 1358, 1362 (9th Cir.1995) (“Under FELA, an employee can hold an employer liable for intentional or criminal acts by fellow employees under either a
 
 respondeat superior
 
 or direct negligence theory ... ”) (quoting
 
 Taylor v. Burlington Northern R.R.,
 
 787 F.2d 1309, 1814-15 (9th Cir.1986)). I have concluded that plaintiff has not done so,
 
 see supra
 
 text pp. 608-12, and thus, summary judgment will be granted on plaintiffs battery claim under FELA.
 

 2.
 
 Failure to Provide a Safe Workplace
 

 Plaintiff’s remaining claims under FELA will suffer the same fate. Allen asserts that Amtrak was negligent in failing to provide her with a work environment free from harassment by co-workers and company management when the company knew or should have known that such an environment existed. (Complaint, at 116). As discussed in the above analysis of plaintiffs Title VII claim,
 
 see supra
 
 text at 609-12, the evidence fails to live up to its billing in the complaint, because Allen has not produced evidence upon which a reasonable jury could base a finding that Amtrak was negligent in its handling of Platt’s conduct. Therefore, summary judgment will be granted as to Allen’s FELA claims based on Amtrak’s negligence.
 

 3.
 
 Negligent Inñiction of Emotional Distress
 

 Plaintiff also seeks to proceed against Amtrak under FELA on a theory of negligent infliction of emotional distress. In enacting FELA, Congress “placed the negligence of a co-employee upon the same basis as the negligence of the employer,”
 
 Chesapeake & Ohio Ry. v. De Atley,
 
 241 U.S. 310, 313-14, 36 S.Ct. 564, 565, 60 L.Ed. 1016 (1916), and thus a plaintiff who asserts a negligence claim under FELA need not establish
 
 respondeat superior
 
 liability or direct employer negligence liability in order to recover against an employer.
 
 See Mullahon,
 
 64 F.3d at 1362. Rather, a plaintiff may prevail merely by producing evidence that an employee was negligent and caused plaintiff injury.
 
 See id.
 

 In order to prevail on a theory of negligent infliction of emotional distress under FELA, plaintiff must satisfy the “zone of danger” test set forth in
 
 Goltshall,
 
 512 U.S. at 556, 114 S.Ct. at 2411.
 
 See id.
 
 at 556, 114 S.Ct. at 2411 (“Railroad employees will ... be able to recover for
 
 *614
 
 injuries — physical and emotional — caused by the negligent conduct of their employers that threatens them imminently with physical impact.”).
 
 [15]
 
 The zone of danger test requires a showing that “(1) the plaintiff sustained a physical impact or (2) the plaintiff was placed in immediate risk of physical harm or was threatened imminently with physical impact.”
 
 Ferguson v. CSX Transp.,
 
 36 F.Supp.2d 253, 256 (E.D.Pa.1999) (citing
 
 Bloom v. Consolidated Rail Corp.,
 
 41 F.3d 911, 915 (3d Cir.1994)).
 

 Recently, in
 
 Metro-North Commuter R. R. Co. v. Buckley,
 
 521 U.S. 424, 117 S. Ct. 2113, 138 L.Ed.2d 560 (1997), the Supreme Court considered the meaning of “physical impact” in a factual setting that, like this case, involved harmless physical contact. The plaintiff in
 
 Buckley
 
 claimed he was entitled to recover under FELA because he was exposed to asbestos, yet he had exhibited no symptoms of disease resulting from the exposure. The Court observed that “the words ‘physical impact’ do not encompass every form of ‘physical contact.’ ”
 
 Buckley,
 
 521 U.S. at 432, 117 S.Ct. at 2118, and held that “physical impact ... does not include a simple physical contact with a substance that might cause a disease at a substantially later time- — where that substance, or related circumstances, threatens no harm other than disease related risk.”
 
 Id.
 
 at 430, 117 S.Ct. at 2117.
 
 [16]
 
 Thus, harmless contact alone, without real physical injury or the threat thereof, does not constitute a “physical impact” within the meaning of the zone of danger test set forth in
 
 Gottshall.
 

 Under the Supreme Court’s definition, Allen did not sustain a “physical impact” within the meaning of FELA, nor was she threatened with such. Allen has alleged merely harmless touching by Platt that neither caused physical injury nor could have resulted in physical harm. Like the plaintiff in
 
 Buckley,
 
 the Allen was subjected to “simple physical contact” that “threatened] - no harm.”
 
 Id.
 
 at 430, 117 S.Ct. at 2117.
 
 [17]
 
 Because Allen has not raised a genuine issue of material fact as to whether she was subjected to a physical injury or a risk or threat thereof, I conclude that she has not satisfied the zone of danger test and cannot proceed on a theory of negligent infliction of emotional distress under FELA.
 
 See also DeCesare,
 
 1999 WL 330258, at *7.
 
 [18]
 

 III. CONCLUSION
 

 In closing, I must make clear that my holding today is in no way intended to condone the behavior of Larry Platt toward plaintiff in this case. Let me be clear: Platt’s behavior was insensitive, in
 
 *615
 
 appropriate, and wrong. His conduct caused annoyance and anxiety in a dedicated employee. Such behavior has no place in the workplace.
 

 Nevertheless, plaintiff has failed to raise a genuine issue of material fact as to whether Amtrak was somehow responsible for or negligent in its handling of Platt’s conduct. Plaintiff’s own evidence demonstrates that on every one of the few occasions in which she and other individuals complained to Amtrak officials about Platt, swift action ensued that was reasonably calculated to, and was often effective in, ending the complained-of conduct. The evidence shows that Amtrak received only two formal complaints over a period of eight years prior to plaintiffs complaint, and responded immediately not only to those complaints, but to plaintiffs complaints as well. I conclude that a reasonable jury could not find that Amtrak was negligent in its response to Platt’s conduct, and will grant summary judgment in favor of defendant.
 

 An appropriate Order follows.
 

 ORDER
 

 AND NOW, this 18th day of March, 2000, upon consideration of the motion of defendant, National Railroad Passenger Corporation (Document No. 17 in Case No. 98-3421), plaintiffs response (Document No. 19 in Case No. 98-3421), the memo-randa submitted therewith, and the evidence pursuant to Rule 56 of the Federal Rules of Civil Procedure, and having concluded, for the reasons set forth in the foregoing memorandum, that there is no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law, it is hereby ORDERED that the motion of defendant is GRANTED as to all counts in civil actions No. 98-3821 and No. 99-130.
 

 IT IS FURTHER ORDERED that JUDGMENT IS HEREBY ENTERED in favor of defendant National Railroad Passenger Corporation and against plaintiff Martha Allen in civil actions No. 98-3821 and No. 99-130.
 

 [1]
 

 . In 1997, another harassment complaint was filed against Platt, by another female Amtrak employee, and an investigation of that claim led to Platt's termination/ Platt was later reinstated upon appeal. (Davidson Declaration, at ¶ 12-13).
 

 [2]
 

 . Typically, Allen’s foreman during her shift was Ed Heath. Platt was the supervising foreman during Allen’s final hour on the job, at the time Allen would punch out. (Allen Deposition I, at 90). However, Platt did not control her job assignments, and there were
 
 *607
 
 only 45 minutes a day that held a potential for interaction between Platt and Allen.
 
 (Id.
 
 at 52).
 

 [3]
 

 . At no time did Platt discipline Allen, proposition her sexually, or threaten her. (Allen Deposition III, at 274-75). The only physical contact between Platt and Allen occurred when Platt touched her hand as she reached for her time card and, in a separate incident, stroked her ear.
 

 [4]
 

 . As a result of Platt’s conduct, Allen felt “uneasy,” "uncomfortable,” “upset,” “very nervous,” “humiliate[d],” "intimidated,” and "afraid.” (Allen Deposition I, at 39, 85, 140). Medical records indicate that she suffered from depression, chronic and acute anxiety, dry mouth, a lack of sleep and stress, as well as a gastro-inlestinal problem. (Plaintiff's Response, Exhibit B; Allen Deposition I, at 85, 129; Allen Deposition III, at 276). Letters and notes from her doctors indicated that she was unable to work at the times she took leaves of absence. (Plaintiffs Response, Exhibit B, Note from Allen Levy, M.D., June 3, 1996; Letter from Timothy J. Michals, M.D., Aug. 22, 1996; Letter from Timothy J. Mi-chals, M.D., May 1, 1998).
 

 [5]
 

 . I doubt that Allen has produced sufficient evidence to sustain her burden as to the first and fourth elements. First, I do not believe there is sufficient evidence for a reasonable jury to conclude that Platt harassed Allen "because of” her sex.
 
 See Oncale v. Sundowner Offshore Services, Inc.,
 
 523 U.S. 75, 80-81, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). Platt’s conduct consisted of teasing plaintiff with her time card, staring at her, trailing her, touching her ear and hand, and following her into the women’s locker room. Not one of these incidents had an overt sexual connotation to it. Even viewing the evidence in the light most favorable to Allen, it appears that Platt never said anything sexual to her, and never did anything overt to show to that he desired her sexually or that his behavior was motivated by the fact that she was a woman.
 

 Second, I doubt that on the evidence before me, a reasonable trier of fact could find that Platt’s conduct rose to the level of objective severity and abusiveness required under Title VII. See
 
 Mendoza v. Borden, Inc.,
 
 195 F.3d 1238 (11th Cir.1999) ("constant” following and staring, combined with individual incidents, insufficient to state a hostile work environment claim). Two other judges of this district, when faced with more egregious and overt conduct by the very same supervisor, Platt, toward other women at Amtrak, concluded on defendant’s motion for summary judgment that Platt’s conduct did not rise to the level of severity necessary under Title VII.
 
 See Bishop v. Nat’l R.R. Passenger Corp.,
 
 66 F.Supp.2d 650 (E.D.Pa.1999) (Platt made a number of sexual comments to plaintiffs, including one to the effect that "he loved big women and he loved women with big breasts;” would remark about plaintiffs' body parts; asked one plaintiff out on a date; inquired about plaintiffs' personal lives; and referred to himself as one plaintiff’s "stud muffin;” and would stare, glare, and "leer” at plaintiffs);
 
 DeCesare v. Nat’l R.R. Passenger Corp.,
 
 1999 WL 330258 (E.D.Pa. May 24, 1999) (while plaintiff was bending over a table, Platt walked up behind her and commented, "That’s a dangerous position for a woman to be^ — for a woman like you to be in;” Platt would stare at plaintiff while chewing on a toothpick or straw and rolling his tongue across his lips; when asked by plaintiff what was around his neck, Platt grabbed and rubbed his crotch and said that it was his "extension” and laughed).
 

 [6]
 

 . Even if plaintiff were successful in esfablish-ing that Platt was a supervisor, plaintiff’s own evidence substantially supports Amtrak’s affirmative defense. The evidence on the record reveals that Amtrak "exercised reasonable care,’’
 
 Evans,
 
 166 F.3d at 150, with respect to Platt’s conduct, and that Allen failed to report certain incidents and thereby avail herself of remedial measures that could have been taken by Amtrak. (Allen Deposition I, 117-19; Allen Deposition III, at 274). This evidence is discussed in the text under the "Liability for Co-Worker Conduct” section.
 

 [7]
 

 . My analysis focuses on the first and second proofs of employer liability. The third form of liability is essentially the supervisory liability discussed in the prior section.
 

 [8]
 

 . In
 
 dicta,
 
 the Supreme Court recently cast doubt on the appropriateness of the “scope of employment” analysis in co-employee harassment cases.
 
 See Faragher,
 
 524 U.S. at 799, 118 S.Ct. at 2289. However, the Supreme Court’s holding in
 
 Faragher
 
 focused on employer liability for harassment by supervisors (not by co-employees), and the Court did not clearly sound the death knell for the scope of
 
 *610
 
 employment analysis in co-employee harassment cases. Therefore, I include a scope of employment analysis.
 

 [9]
 

 . In,
 
 Rabón,
 
 an intentional tort case involving a sexual assault on a employee by a security guard employed by the defendant corporation, the Court of Appeals for the Fourth Circuit held that the corporation could not be held liable for the acts of its employee. Addressing the "scope of employment” aspect of
 
 respondeat superior,
 
 the court wrote,
 

 The assault by Roberts was manifestly not in furtherance of Guardsmark’s business. ... The assault was to effect Roberts’ independent purpose and it was not within the scope of his employment. The mere fact that the tort was committed at a time that Roberts should have been about Guardsmark’s business and that it occurred at the place where Roberts was directed to perform Guardsmark's business does not alter these conclusions.
 

 Rabón,
 
 571 F.2d at 1279 (citation omitted).
 

 [10]
 

 . The conduct by Platt that Allen did not report was not so obvious or open that Amtrak should have known of it.
 

 [11]
 

 . Again, I base this conclusion on the fact that Amtrak was apprised of only a few instances of Platt's conduct. The unreported conduct toward Salerno and Bishop was not so open or obvious that Amtrak should have known of it, as Platt, appeared to limit his allegedly harassing conduct to one-on-one interactions.
 

 [12]
 

 . This complaint was effective in cutting down on Platt’s contact with Bishop, though he continued to stare at Bishop through a window in her office. However, Bishop did not bring this continuing behavior to the attention of Amtrak management until after Al
 
 *612
 
 len’s complaints, in 1996.
 
 See Bishop,
 
 66 F.Supp.2d at 656-57.
 

 [13]
 

 . Platt’s termination was later overturned appeal because too much time had elapsed since the prior incidents involving women other than Allen. (Davidson Declaration, at ¶ 12-13). .Had Amtrak moved to dismiss Platt prior to Allen's complaints, as plaintiff’s argument suggests Amtrak should have, the decision almost certainly would have been overturned. Thus, Amtrak cannot be said to have been negligent in not firing Platt prior to Allen's complaint. Furthermore, Allen herself told Amtrak management that she did not want Platt to be fired.
 
 (Id.
 
 at 179; Allen Deposition II, at 56).
 

 [14]
 

 . "[T]he Federal Employers’ Liability Act is founded on common-law concepts of negligence and injury subject to such qualifications as Congress has imported into those terms.”
 
 Urie v. Thompson,
 
 337 U.S. 163, 182, 69 S.Ct. 1018, 1031-32, 93 L.Ed. 1282 (1949). Thus, federal courts look to federal common law, not state law, to analyze tort claims under FELA.
 
 See Consolidated Rail Corp. v. Gotts-hall,
 
 512 U.S. 532, 543, 114 S.Ct. 2396, 2404, 129 L.Ed.2d 427 (1994).
 

 [15]
 

 . The viability of the zone of danger test in the FELA setting was recently reaffirmed in
 
 Metro-North Commuter R.R. Co. v. Buckley,
 
 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997).
 

 [16]
 

 . In so concluding, the Court in
 
 Buckley
 
 relied on the
 
 Gottshall
 
 majority’s observations that FELA’s was primarily intended to protect workers from “physical perils.”
 
 See Buckley,
 
 521 U.S. at 431, 117 S.Ct. at 2118 (citing
 
 Gottshall,
 
 512 U.S. at 555, 114 S.Ct. 2396).
 

 [17]
 

 . Allen's claim arguably involves even less of a threat of physical injuiy than the claim of the plaintiff in
 
 Buckley.
 
 The plaintiff in
 
 Buckley
 
 had been exposed to a known carcinogen, and thus the negligence there carried with it at least a "disease-related risk" that could have resulted in harm. Here, plaintiff alleges harmless touches to the ear and hand, neither of which resulted in physical injury or had the potential to do so.
 

 [18]
 

 . Plaintiff cites
 
 Smolsky v. Consolidated Rail Corp.,
 
 780 F.Supp. 283 (E.D.Pa.1991),
 
 Dennis v. Consolidated Rail Corp.,
 
 1994 WL 494453 (E.D.Pa. Sept. 7, 1994),
 
 Williams v. Treasure Chest Casino,
 
 1998 WL 42586 (E.D.La. Feb. 3, 1998);
 
 Landry v. Delta Well Surveyors,
 
 1997 WL 399594 (E.D.La. July 15, 1997) for the proposition that a suit under FELA for negligent infliction of emotional distress claim may stand without proof of a physical injury or threat of physical harm. To the extent that they so hold, I believe they contravene the Supreme Court’s holdings in
 
 Gottshall
 
 and
 
 Buckley.
 
 Furthermore, the cases are factually distinguishable, involving more egregious facts than the present case, and, as they are district court decisions, I am not bound to follow them.