**Gayle HIGGINS, Plaintiff,**

v.

**METRO–NORTH RAILROAD COMPANY, Defendant.**

**No. 00 CIV. 0019(WCC).**

United States District Court, S.D. New York.

May 11, 2001.

---

**2.** If the indicated trial date is inconvenient, counsel should contact my Chambers to schedule a different trial date.

Cahill & Goetsch, P.C. (Charles C. Goetsch, Of Counsel), New Haven, CT, for Plaintiff.

Hoguet Newman & Regal LLP (Laura B. Hoguet, Luisa K. Hagemeier, Of Counsel), New York City, for Defendant.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Gail Higgins brings this action against defendant Metro–North Railroad Company ("Metro–North") pursuant to the Federal Employers' Liability Act ("FELA"), as amended, 45 U.S.C. § 51 *et seq.* She claims that she was the victim of sexual harassment and that, as a result of the stress associated therewith, her previously undiagnosed latent multiple sclerosis became symptomatic. She claims: (1) negligent failure to provide her with a workplace "free of tortious interference with her body and person"; (2) negligent failure to supervise managerial employees so as to provide her a workplace "free of tortious physical contact with her body and menaces to her person"; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress. Defendant now moves for summary judgment pursuant to FED. R. CIV. P. 56(b). For the reasons that follow, defendant's motion is granted.

## BACKGROUND

Plaintiff began working for defendant in 1974. In April 1996, plaintiff became secretary to William Duke, Facility Director of Metro–North's equipment maintenance facility in Harmon, New York. In or around April 1997, Duke became ill. For a few months thereafter, Michael Yaeger and John Militano shared the post of Facility Director, with plaintiff working for both of them. Yaeger was then appointed Facility Director, and plaintiff became his secretary. Militano was a Shop Superintendent in the Harmon Facility, responsible for 212 employees who maintain the railroad's rolling stock. (Def. Rule 56.1 Stmt. ¶¶ 1–2.)

On several different occasions between 1996 and 1998, Militano allegedly "screamed" and "yelled" at plaintiff, using obscenities (*id.* ¶¶ 3–6) and made "sexually menacing" comments, including, *inter alia,* that she had a "great ass." (Pl. Mem. Opp. Summ. J. at 12, Ex. 1.) During these incidents, Militano did not physically threaten plaintiff nor cause her to fear for her physical safety. (Def. Rule 56.1 Stmt. ¶¶ 5–6.)

However, on several occasions, Militano did make physical contact with plaintiff in an allegedly sexual way. In 1996, while leaning over to extinguish a cigarette at an ashtray sitting behind plaintiff, Militano grabbed plaintiff under the armpit by the side of her breast, causing her to feel "angry" towards him. (*Id.* ¶ 7; Pl. Mem. Opp. Summ. J. at 11, Ex. 1.) On two occasions, Militano poked plaintiff in the ribs and laughed, apparently because he believed that poking plaintiff in the ribs was a "big joke." (Def. Rule 56.1 Stmt. ¶ 8.) Militano allegedly slapped plaintiff's buttocks hard enough to hurt, but not to cause bruising or other physical injury. (*Id.* ¶ 9; Pl. Mem. Opp. Summ. J. at 11, Ex. 1.) While plaintiff was leaning over a file cabinet, Militano also put his arms around her waist thereby startling her and causing her to fall over. (Def. Rule 56.1 Stmt. ¶ 9; Pl. Mem. Opp. Summ. J. at 11, Ex. 1.) Plaintiff admittedly was never bruised physically or injured by Militano and was never afraid of being physically hurt. (Def. Rule 56.1 Stmt. ¶¶ 7–10.)

On April 30, 1998, plaintiff was taken from work to the hospital due to abdominal pains. (*Id.* ¶ 11.) The tests revealed an ovarian cyst which was surgically removed in May 1998. On May 19, 1998, while on medical leave, plaintiff made an internal

complaint to Metro–North's Office of Workforce Diversity that Militano had sexually harassed her. (*Id.* ¶ 12.) It was concluded that no sexual harassment had occurred and that plaintiff herself had contributed to the allegedly offensive environment. (*Id.*) However, Militano was admonished for unprofessional conduct and sent to a Conflict Resolution Seminar. (*Id.*)

Plaintiff finally returned to work in August 1998. Although she did not return to her former position, she replaced a less senior employee to become the secretary to Trainsmasters Edward Byrne and Peter Hansen in defendant's Transportation Department. (*Id.* ¶ 13.) After plaintiff began working in the Transportation Department, Militano called the office more frequently, began driving around the parking lot in plaintiff's view, (*id.* ¶ 14), and on one occasion told her she still had a "great ass." (Pl. Mem. Opp. Summ. J. at 13.) Finally, in late September 1998, plaintiff became ill and was diagnosed with multiple sclerosis. In 1999, plaintiff left her position and is currently on permanent disability leave. (Def. Rule 56.1 Stmt. ¶ 15.)

## DISCUSSION

### I. *Summary Judgment Standard*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(d). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, all evidence must be viewed and all inferences

must be drawn in the light most favorable to the non-moving party. *See City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 45 (2d Cir.1988).

The party seeking summary judgment bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Upon the movant's satisfying that burden, the onus shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2510. At this stage, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Bald assertions or conjectures unsupported by evidence are insufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990).

### II. *FELA*

FELA provides, in pertinent part, that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. § 51.

#### A. *Negligent Infliction of Emotional Distress*

#### 1. *Sexual Harassment*

■ FELA was enacted in 1908 in an attempt to provide redress for "injuries

and death resulting from accidents in interstate railroads." *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 542, 114 S.Ct. 2396, 2403–04, 129 L.Ed.2d 427 (1994) (quoting *Urie v. Thompson,* 337 U.S. 163, 181, 69 S.Ct. 1018, 1030, 93 L.Ed. 1282 (1949)). It was intended to provide compensation for the "physical dangers of railroad work." *Gottshall,* 512 U.S. at 555, 114 S.Ct. at 2410. FELA has been liberally construed in order to further the statute's remedial purpose. *See id.* at 543, 114 S.Ct. at 2404. Therefore, many courts have recognized a claim under FELA for the negligent infliction of emotional distress based upon sexual harassment. This is especially true when the sexual harassment or discrimination included allegations of common law assault. *See, e.g., Wahlstrom v. Metro–North Commuter R.R. Co.,* 89 F.Supp.2d 506, 515–19 (S.D.N.Y.2000); *Masiello v. Metro–North Commuter R.R.,* 748 F.Supp. 199, 204 (S.D.N.Y.1990); *see also Wilson v. Zapata Off–Shore Co.,* 939 F.2d 260, 265 (5th Cir.1991) (recognizing a claim for negligent infliction of emotional distress for sexual harassment under the Jones Act, which incorporates FELA by reference); *but see Griggs v. National R.R. Passenger Corp., Inc.,* 900 F.2d 74, 75 (6th Cir.1990) (holding that claims of racial and sexual harassment was not cognizable under FELA, because "FELA was not designed to create new substantive torts but to protect railway workers in federal court from common law torts.").

■ In this case, plaintiff did not assert a claim for sexual harassment under Title VII. It is well settled that a plaintiff may assert both negligent infliction of emotional distress under FELA and sexual harassment under Title VII. *See Smolsky v. Consolidated Rail Corp.,* 780 F.Supp. 283, 287–88 (E.D.Pa.1991) (holding that a Title VII claim does not preclude a claim under FELA). However, plaintiff did not file an EEOC complaint, which is the necessary predicate for an action under Title VII, and any such complaint would now be time barred.

### 2. *Zone of Danger*

Plaintiff has alleged emotional injuries as a result of the alleged sexual harassment. She claimed that the stress associated with her alleged sexual harassment caused her latent multiple sclerosis to become symptomatic. Therefore, contrary to plaintiff's contention, her injury is not analogous to a physical injury associated with prolonged exposure to asbestos fibers. Instead, it is allegedly a physical manifestation of emotional injury. *See generally Smith v. Union Pac. R.R. Co.,* 236 F.3d 1168 (10th Cir.2000) (distinguishing between physical injuries and physical manifestations of emotional injury); *cf. Masiello,* 748 F.Supp. at 205 (holding that ulcer was a physical injury caused at least in part by physical contacts, such as being "uninvitingly kissed, hugged, grabbed, and physically lifted off the ground").

■ However, the characterization of her injury as a "physical manifestation of emotional injury," rather than a "physical injury" does not preclude recovery. In *Gottshall,* the Supreme Court concluded that an emotional injury was "an injury" under FELA, 512 U.S. at 550, 114 S.Ct. at 2407–08, and recognized that claims for negligent infliction of emotional distress are cognizable as long as the plaintiff sustained such injuries while in the "zone of danger." *Id.* at 555, 114 S.Ct. at 2410. "[T]he zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id.* at 547–48, 114 S.Ct. at 2406.

In this case, plaintiff testified that she was never in apprehension of any physical or sexual harm. (Pl. Dep. at 82, 106, 118–20, 122–27, 129.) Therefore, her claim does not satisfy the second alternative requirement of the zone of danger test. The sole issue is therefore whether she suffered a physical impact as contemplated in the first alternative requirement of the zone of danger test. We conclude that she did not.

The *Gottshall* Court did not explicitly define the terms "physical impact" or "immediate risk of future harm." However, the Supreme Court later clarified the meaning of the term "physical impact" in *Metro–North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997). In *Buckley*, the Supreme Court held that the mere exposure to a carcinogenic substance was not a physical impact if the only harm that was caused by the exposure was the increase of plaintiff's risk of cancer in the future. *See id.* at 430, 117 S.Ct. at 2117. Indeed, it held that "the words 'physical impact' do not encompass every form of 'physical contact.'" *Nelson v. Metro–North Commuter R.R.*, 235 F.3d 101, 110 (2d Cir.2000) (quoting *Buckley*, 521 U.S. at 432, 117 S.Ct. at 2118). It applies only to those contacts "that caused, or might have caused, immediate traumatic harm." *Buckley*, 521 U.S. at 430, 117 S.Ct. at 2117. In sum, *"Buckley* has restated the traditional rule that an event cannot constitute a physical impact, even if it entails contact, unless it has a physically harmful effect on the body." *Nelson*, 235 F.3d at 110.

In this case, although plaintiff testified that it "hurt" when she was slapped on the buttocks, she testified that she was never physically injured by the contacts and was never in apprehension of physical harm. (Pl. Dep. at 82, 106, 118–20, 122–27, 129.) According to plaintiff, she felt "demeaned," "offended" and "angry." (*Id.*) Plaintiff felt that Militano was "emotionally abusing [her], that's all. . . . It was emotional abuse the whole time. That's what it was." (Def. Rule 56.1 Stmt. ¶ 8; Pl. Dep. at 126–27.) Without any allegation of physical injury or apprehension thereof, these uninvited contacts, however emotionally repugnant, do not constitute physical impacts under FELA.

In *Allen v. National R.R. Passenger Corp.*, 90 F.Supp.2d 603 (E.D.Pa.2000), the plaintiff alleged that she was the subject of sexual harassment and as a result felt "uneasy," "uncomfortable," "upset," "very nervous," "humiliate[d]," "intimidated," and "afraid." *Id.* at 607 n. 4. Her emotional injuries caused her to suffer from "depression, chronic and acute anxiety, dry mouth, a lack of sleep and stress, as well as a gastro-intestinal problem." *Id.* Because the contacts with the plaintiff's ear and hand "neither caused physical injury nor could have resulted in physical harm," the court held that they were merely "harmless" and did not constitute a "physical impact" under *Gottshall. Id.* at 614. The court echoed the observations of *Buckley* and *Gottshall* respecting FELA's primary purpose of protecting railroad workers from "physical perils." *Id.* at 614 n. 16.

The principle that a physical impact requires at least some physical injury was also applied in *Tongret v. Norfolk & Western Ry., Co.*, 980 F.Supp. 903 (N.D.Ohio 1997). In *Tongret*, a male employee claimed that he was harassed by male co-workers when he was hit in the back of the neck and placed in a headlock. *See id.* at 905. In that case, the court held that the headlock, "while literally a physical impact," was nothing more than an uninvited touching because there was no infliction of injury. *See id.* at 907; *see also McMillan v. National R.R. Passenger Corp.*, 648

A.2d 428, 430–31 (1994) (upholding directed verdict for the defendant even though the victim alleged that he was punched in the shoulder and a lit blow torch was placed near the seat of his pants); *Visconti v. Consolidated Rail Corp.*, 801 F.Supp. 1200, 1204, 1212–13 (S.D.N.Y.1992) (dismissing claim where plaintiff alleged that her supervisor " 'brush[ed] close to her body, stood close to her for one or two minutes and put his hand on her back for less than a minute.' ").

Admittedly, the contacts in this case were more offensive than the contacts to the ear and hand in *Allen.* However, in this case, plaintiff testified that she was not physically injured and was not in fear of any physical or sexual harm. We also recognize that *Wahlstrom* refused to extend the reasoning of *Tongret* and *McMillan* to claims of sexual harassment. *See Wahlstrom*, 89 F.Supp.2d at 519. However, in *Wahlstrom*, the plaintiff was not merely subjected to a physical impact, but was also found to have had a reasonable apprehension of physical and sexual harm, in contrast to the situation here.

Plaintiff argues that she did suffer a physically harmful effect from Militano's contacts because her latent multiple sclerosis became symptomatic. However, it does not appear that the physical manifestation of emotional harm was the "harmful effect" contemplated by the Supreme Court in *Buckley.* Our conclusion is bolstered by the fact that in *Buckley,* the Supreme Court held that the worker could not "recover unless, and until, he manifests symptoms of a disease." 521 U.S. at 427,

117 S.Ct. at 2115. The *Buckley* court focused on the physical perils of FELA and its initial purpose to protect employees' physical safety and security. Although we must liberally construe FELA to further its remedial purpose, it appears that the zone of danger requirement precludes recovery for those physical impacts which do not directly cause a physical injury to plaintiff or place her in apprehension of physical or sexual harm.[1]

Plaintiff's reliance on *Wahlstrom* is unavailing. In that case, the court conducted an analysis of cases involving FELA claims of sexual harassment. It concluded that "the viability of the plaintiff's cause of action depends entirely on whether the actual or threatened 'physical impact' placed the plaintiff in reasonable apprehension of physical harm." 89 F.Supp.2d at 517. The court denied summary judgment because there was a question of fact whether the plaintiff, who "was slapped on the buttocks so hard that it stung," feared that her assailant was about to cause her physical harm. *Id.* at 518.

In this case, plaintiff testified that she was not in apprehension of physical harm. She testified that she was being subjected only to emotional abuse the entire time. Applying the *Wahlstrom* analysis to this case, we conclude that, even though plaintiff may have been the victim of common law battery, summary judgment is appropriate because there is no question of fact for the jury as to whether plaintiff feared that she might be physically or sexually harmed in the near future; she testified that she had no such fear.

---

1. Several district courts have upheld claims for sexual harassment without discussing resultant physical injury. *See Allen*, 90 F.Supp.2d at 614 n. 18 (citing, *inter alia*, *Dennis v. Consolidated Rail Corp.*, No. CIV. A. 93–1915, 1994 WL 494453, at *9 (E.D.Pa. Sept. 7, 1994) (holding that the grabbing of plaintiff's buttocks two or three times "clearly entails a physical impact")). However, plaintiff has not proffered any reason why these cases, some of which were decided prior to *Buckley* or fail to mention *Buckley*, should weaken the holding of *Buckley*. *See Allen*, 90 F.Supp.2d at 614 n. 18. Indeed, plaintiff does not argue that a physical impact does not require some type of injury.

Defendant's motion for summary judgment is therefore granted with respect to her claim of negligent infliction of emotional distress. To allow a plaintiff to recover for purely emotional injuries, when she testified that she suffered no physical injury and was not in any apprehension of physical harm, would be inconsistent with FELA's purpose of allowing recovery for the physical perils involved in railroad employment.

### B. Intentional Infliction of Emotional Distress

Neither the Supreme Court nor the Second Circuit has expressed any opinion as to whether a claim for intentional infliction of emotional harm is cognizable under FELA. *See Gottshall,* 512 U.S. at 541 n. 2, 114 S.Ct. at 2403 n. 2. Because FELA has been interpreted to cover some intentional torts, *see Atchison, Topeka and Santa Fe Ry. Co. v. Buell,* 480 U.S. 557, 562 n. 8, 107 S.Ct. 1410, 1413 n. 8, 94 L.Ed.2d 563 (1987) (collecting cases), many courts have also recognized claims for the intentional infliction of emotional distress. *See Stiffarm v. Burlington N. R.R. Co.,* 1996 WL 146687, at * 2 (9th Cir. Apr. 1, 1996); *Lancaster v. Norfolk & W. Ry. Co.,* 773 F.2d 807, 812–13 (7th Cir.1985); *Teague v. National R.R. Passenger Corp.,* 708 F.Supp. 1344, 1350–54 (D.Mass.1989); *Wilson v. Norfolk & W. Ry. Co.,* 187 Ill.2d 369, 240 Ill.Dec. 691, 718 N.E.2d 172, 179–80 (1999); *Hawkes v. Norfolk & W. Ry. Co.,* 891 S.W.2d 568, 571–72 (Mo.Ct.App.1995); *see also Cohen v. Metro–North Commuter R.R. Co.,* No. 89 Civ. 7498, 1991 WL 4699, at *3–4 (S.D.N.Y.1991). We follow these holdings and conclude that a claim for the intention-

al infliction of emotional distress does exist under FELA.

However, the courts have not extended the reach of FELA to intentional torts lacking in any physical dimension. *See Lancaster,* 773 F.2d at 812–13; *Adkins v. Seaboard Sys. R.R.,* 821 F.2d 340, 341 (6th Cir.1987); *Wilson,* 240 Ill.Dec. 691, 718 N.E.2d at 178–80. Thus, the majority of courts who have considered the issue have held that there can be no recovery under FELA for intentional infliction of emotional distress, absent physical contact or threat of physical contact. *See Wilson,* 240 Ill.Dec. 691, 718 N.E.2d at 178–80.

■ There is an issue as to whether the *Gottshall* zone of danger test should be applied to claims of intentional infliction of emotional distress. *See, e.g., Wiora v. Harrah's Illinois Corp.,* 68 F.Supp.2d 988, 994–95 (N.D.Ill.1999). Defendant argues that because FELA does not expressly apply to intentional torts, the statute should not be construed to allow claims of intentional infliction of emotional distress which would not satisfy the standard enunciated in *Gottshall* for claims of negligent infliction of emotional distress, i.e., the zone of danger test. Plaintiff argues that she merely has to prove "physical contact," and that she has done so. However, this is not an issue that must be resolved in this case. Plaintiff's claim fails because she cannot impute liability to defendant.[2]

■ Intentional torts committed by employees can be imputed to the employer only on the principle of *respondeat superior* or "if the employer was negligent in hiring, supervising, or failing to fire the intentional wrongdoer." *Lancaster,* 773 F.2d at 818; *see Ross v. Mitsui Fudosan,*

---

**2.** It is a question for the jury as to whether Militano's actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intoler-

able in a civilized community." *Visconti,* 801 F.Supp. at 1209 (quoting *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86, 90 (1983)).

*Inc.,* 2 F.Supp.2d 522, 532 (S.D.N.Y.1998). An employer can be held vicariously liable for the tort committed by an employee if the torts are committed within the scope of employment. *See Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995). "However, an employer is not liable for torts committed by the employee for personal motives unrelated to the furtherance of the employer's business." *Id.* Because "sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context," *Ross,* 2 F.Supp.2d at 531, defendant is not vicariously liable for Militano's actions.

■ To succeed on a negligent supervision claim, plaintiff must demonstrate that Metro–North "knew or should have known prior to the assault of propensities of the assailant to commit such assaults." *Harrison v. Missouri Pac. R.R. Co.,* 372 U.S. 248, 249, 83 S.Ct. 690, 690, 9 L.Ed.2d 711 (1963) (per curiam). The plaintiff must show "that (1) [Militano] had a propensity for 'the type of behavior that caused plaintiff's harm,' and (2) Metro–North knew of this propensity." *Wahlstrom,* 89 F.Supp.2d at 515 (quoting *Ross,* 2 F.Supp.2d at 532).

Plaintiff argues that Militano's supervisors were aware of his abusive nature in violation of defendant's civility code. Yaeger testified that Militano screamed and cursed at employees. (Yaeger Dep. at 23–25.) Militano had also gotten angry after a meeting and threw his radio at a window in his office. (Militano Dep. at 56.) Plaintiff claims everyone knew about the incident. (Pl. Dep. at 111–12.) Moreover, Yaeger had to speak to Militano regarding his screaming at employees. (Yaeger Dep. at 25; Militano Dep. at 60–61.) Militano had also poked a male employee in the ribs and touched his buttocks as well as poking another female employee's ribs. (Yaeger Dep. at 29–30; Militano Dep. at 58–59; Constantini Dep. at 14–15.)

We acknowledge that Militano was unprofessional in his relations with subordinates. However, no claim of sexual harassment had ever been lodged against him. Although he had poked another female employee in the ribs, there is no allegation that she complained to his supervisor. The investigation conducted after he poked the male employee in the ribs concluded that there was no misconduct. While Yaeger had been told by plaintiff that Militano had poked her in the ribs, there is no allegation that he was informed as to the touching of her buttocks and breast. Indeed, plaintiff testified that she "didn't tell anyone" about the alleged harassment. (Pl. Dep. at 133.) Furthermore, there is no allegation that he touched or threatened plaintiff physically after she filed a complaint detailing Militano's "unprofessional conduct." (Pl. Mem. Opp. Summ. J. at 11, Ex. 2.) Although some of defendant's other employees may have been aware of Militano's repeatedly calling the office where she worked, plaintiff made no further complaints about any sexual harassment.

Accordingly, defendant's motion for summary judgment is granted with respect to plaintiff's intentional infliction of emotional distress claim.

### C. *Negligence*

Defendant did not explicitly argue that summary judgment should be granted on plaintiff's first and second causes of action: (1) that the employer failed to provide plaintiff with a workplace "free of tortious interference with her body and person;" and (2) that the employer "negligently breached its duty to the plaintiff by failing to adequately supervise its managerial employees so as to provide and maintain for

her such a reasonably safe place in which to work, including a workplace for the plaintiff free of tortious physical contact with her body and menaces to her person." Because such claims are apparently based only upon negligent supervision of Militano, they are dismissed for the reasons set forth in Part II.B. above.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is granted. The complaint is dismissed in all respects with prejudice.

SO ORDERED.