**Ralph T. BUTLER, Appellant,**

v.

**THE BURLINGTON NORTHERN and Santa Fe Railway Company, Respondent.**

No. WD 61675.

Missouri Court of Appeals,
Western District.

Nov. 18, 2003.

Before JOSEPH M. ELLIS, Chief Judge, HAROLD L. LOWENSTEIN, Judge and VICTOR C. HOWARD, Judge.

JOSEPH M. ELLIS, Chief Judge.

Ralph T. Butler appeals the grant of summary judgment to the Burlington Northern and Santa Fe Railway Company ("Burlington"), on his claim against Burlington, under the Federal Employers' Liability Act ("FELA," 45 U.S.C. §§ 51–60), for negligent infliction of emotional distress. Butler claims the circuit court erred in entering summary judgment against him because genuine issues of material fact remain in dispute and Burlington was not entitled to judgment as a matter of law, in that he pleaded a viable cause of action against Burlington for negligent infliction of emotional distress under FELA. We affirm the judgment of the circuit court.

The standard of review governing this case was aptly summarized in *Peck v. Alliance General Insurance Co.*, 998 S.W.2d 71 (Mo.App. E.D.1999):

A movant is entitled to summary judgment if the motion for summary judgment and the response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We view the record in the light most favorable to the party against whom summary judgment is entered and accord the non-movant the benefit of all reasonable inferences from the record. We take as true the facts set forth by affidavit or otherwise in support of the moving party's motion unless they are contradicted by the nonmoving party's response to the summary judgment motion. The non-moving party's response must show the existence of some genuine dispute as to one of the material

Richard L. Carney, Kansas City, MO, for appellant.

William P. Coates, Jr., Overland Park, KS, for respondent.

facts necessary to the plaintiff's right to recover.

*Id.* at 74 (internal citations omitted).

Viewed in the light most favorable to Butler, the record reflects the following material, undisputed facts.[1] At the time of the events giving rise to his claim, Butler was an employee of Burlington, which operates a railway system and transports freight by railroad in interstate commerce, is authorized to conduct business in Missouri, and is subject to the provisions of FELA. In the fall of 1998, several Burlington employees decided to organize a "Man of the Year" party. They advertised the event using Burlington's e-mail system and distributed written invitations on company premises which stated, in part: "Provocative entertainment. Gentlemen's night out. No wives or girlfriends." In the week before the event was scheduled to be held, Butler received several separate oral and written invitations from co-workers to attend the party, each of which he declined. (When he read the written invitation, Butler saw the "no wives or girlfriends" portion, but didn't see the part saying "provocative entertainment.") As he couldn't understand why they seemed so insistent that he attend, Butler thought he might be receiving the "Man of the Year" award in recognition of his many years of service to Burlington. Although Butler understood that under Burlington's

work rules he could have chosen not to go, he considered the pressure akin to an implicit "order" which, if disobeyed, might cause him to be considered guilty of insubordination. Butler therefore attended the party.

At about 6:45 p.m. on the evening of Saturday, November 14, 1998, in the course of what he claims was within the course and scope of his employment with Burlington, Butler arrived at the function, which was held in the "party room" at the Wyndham Hotel in Kansas City and was partially videotaped by one of Burlington's employees. The event had two segments. The first consisted mainly of drinking alcoholic beverages, the telling of a lot of bad and off-color jokes, and the presentation of various "gag awards" and associated statuettes. During this portion of the event, which lasted about two and a half hours, Butler was asked by a fellow party-goer if he had any extra cigars, and Butler replied that he thought he had some behind the seat in his truck. Butler left with the person who had asked about the cigars, and they returned to the party after Butler retrieved them from his truck. At the conclusion of the awards portion of the program, Butler heard an announcement that the "entertainment" would be arriving in a few minutes. He also heard someone say that the "entertainment had run out of gas and they was running a little late, but

---

1. Burlington argues (and we agree) that Butler's brief recites a number of "facts" and legal conclusions which are either unsupported by the record or immaterial for the purpose of determining whether the trial court properly granted Burlington's motion for summary judgment. Our review is further complicated by the fact that Butler's response to Burlington's motion for summary judgment is a rambling narrative that thoroughly violates the applicable (2002) version of Rule 74.04(c)(2), which provides, in relevant part, that such responses "shall admit or deny each of movant's factual statements in numbered paragraphs that correspond to movant's numbered paragraphs, shall state the reason for each denial, shall set out each additional material fact that remains in dispute, and shall support each factual statement asserted in the response with specific references to where each such fact appears in the pleadings, discovery or affidavits." While this shortcoming could, in and of itself, be fatal to Butler's appeal (*see, e.g., Peck,* 998 S.W.2d at 75–76), we have nevertheless tried to do our best to separate the wheat from the chaff in the record before us so his appeal can be decided on its merits.

they were on their way." Shortly thereafter, the door to the party room was closed, and the second part of the event began.

Two women dressed in police uniforms (who Butler believed to be two female police officers) entered the room, about ten to fifteen feet away from Butler. Butler heard one of the women say, "Someone has complained about loud noises in here. We need to talk to the Man of the Year about these complaints." Butler then became uncomfortable and moved to the table farthest away from the women, which was in the back of the room, because he "didn't know that we had did anything that would cause police officers to be there." The women then proceeded to approach a party-goer other than Butler and ask him if he was the "Man of the Year." After the other party-goer, who was highly intoxicated and whose speech had become very slurred, replied "Yes, yes," Butler heard one of the women tell the man: "Do you know you've been making too much noise here? If you don't straighten up, we're going to take you to jail." According to Butler, the women subsequently placed handcuffs on the man and sat him down in a chair at the front center of the party room. Butler also said he saw one of the women strike the man several times on the back with a belt, "and every time they hit him, he hollered out." At some point, Butler claims, the man fell out of the chair and onto the floor, after which he was placed back in the chair again. Loud music then began playing, and Butler saw the two female "police officers" start dancing to the music and begin taking their clothes off, beginning with their hats and uniforms and continuing down to only a G-string panty.

After a while, the music stopped, and Butler heard someone up front say that the two female entertainers would be performing lap dances for $5.00. After someone collected money from several party-goers, the music began again, and the women began giving lap dances, starting with the "Man of the Year." Eventually, the music stopped again, the lights were turned up, and Butler went home.

According to Butler, seeing what he thought were two female police officers handcuff and strike the drunken "Man of the Year" in the back with a belt triggered a post-traumatic "flashback," which caused Butler to mentally relive the multiple occasions on which he had been arrested, handcuffed, or beaten by the police—which were, as Butler put it in his brief, "past events he would rather not remember, of a past he would rather forget." During his deposition, Butler stated that the first such traumatic event took place in 1966. On his way to work late one evening, Butler, who was driving while intoxicated and had a 17–year–old boy as a passenger, collided head-on with another vehicle, resulting in the boy's death. Butler was arrested, tried and convicted of fourth-degree (involuntary) manslaughter, for which he spent just over seventeen months in the Kansas prison system. The second, third, and fourth events consisted of three separate DUI arrests prior to 1981. The fifth traumatic event occurred sometime in the 1970s. While being questioned by Kansas City police investigating a robbery, Butler claimed to have been beaten by a police officer wearing leather gloves.

As a direct and proximate result of this "flashback," which according to Butler was the product of negligent acts by Burlington and its agents, servants, and employees, Butler claimed to have sustained a variety of serious, painful, progressive, permanent, and disabling injuries, including severe pain, depression, fear, seizures, memory impairment, headaches, loss of concentration, sleep disturbance, energy loss, anxiety, dysphasia, nervousness, men-

tal anguish and distress, traumatic stress and a decreased ability to enjoy life, resulting in past and future medical and therapeutic expenses, lost wages, and reduced earning capacity.

■ FELA cases may be brought, at the plaintiff's option, in federal court or in state court. *45 U.S.C. § 56.* Butler chose to bring his FELA suit against Burlington in the Circuit Court of Jackson County. While FELA cases adjudicated in state courts are subject to state procedural rules, the substantive law governing them is federal. *Drury v. Mo. Pac. R.R. Co.,* 905 S.W.2d 138, 146 (Mo.App. E.D.1995) (citing *St. Louis Southwestern Ry. Co. v. Dickerson,* 470 U.S. 409, 411, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985)).

In *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), the United States Supreme Court resolved a conflict among the lower federal appellate courts concerning the substantive law governing this case, which is "the threshold standard that must be met by plaintiffs bringing claims for negligent infliction of emotional distress under FELA." 512 U.S. at 540–41, 114 S.Ct. at 2403. Section 1 of FELA provides that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." *45 U.S.C. § 51.* Accordingly, the Court noted that its task was to determine "under what circumstances emotional distress may constitute 'injury' resulting from 'negligence' for purposes of the statute." *Gottshall,* 512 U.S. at 542, 114 S.Ct. at 2403. After observing that the injury involved in claims for negligent infliction of emotional distress "is mental or emotional harm (such as fright or anxiety) that is caused

by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms," *id.* at 544, 114 S.Ct. at 2405, the Court proceeded to hold that "as part of its duty to use reasonable care in furnishing its employees with a safe place to work, a railroad has a duty under FELA to avoid subjecting its workers to negligently inflicted emotional injury." *Id.* at 550, 114 S.Ct. at 2408 (internal quotation omitted).

Recognizing that "this duty is not self-defining," *id.,* the Court adopted the common-law "zone of danger" test to delimit the proper scope of the employer's duty. *Id.* at 554, 114 S.Ct. at 2410. This test, the Court explained, "limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id.* at 547–48, 114 S.Ct. at 2406. Under the zone of danger test, the Court went on to say, "a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will not." *Id.* at 556, 114 S.Ct. at 2410–11.

Acknowledging that the zone of danger test "does not allow recovery for all emotional distress," the Court concluded by remarking that a less restrictive standard of recovery would raise "the potential for a flood of trivial suits, the possibility of fraudulent claims that are difficult for judges and juries to detect, and the specter of unlimited and unpredictable liability." *Id.* at 557, 114 S.Ct. at 2411. In particular, the Court noted that the "incidence and severity of emotional injuries are also more difficult to predict than those of typical physical injuries because they depend on psychological factors that

ordinarily are not apparent to potential tortfeasors." *Id.* at 546, 114 S.Ct. at 2405.

There is only one published Missouri appellate case applying the zone of danger test set forth in *Gottshall,* and that is *Hawkes v. Norfolk & Western Railway Co.,* 891 S.W.2d 568 (Mo.App. E.D.1995).[2] In *Hawkes,* the plaintiff appealed the grant of summary judgment to his employer, the Norfolk & Western Railway Company, on his claims against Norfolk, under FELA, for negligent and intentional infliction of emotional distress. *Id.* at 569. Hawkes alleged that over a five-year period, Norfolk had undertaken a course of negligent and intentional harassment which ultimately resulted in "severe mental, emotional and physical injuries," including chest pains, headaches, anxiety attacks, fits of rage, crying spells, depression, loss of respect and esteem, nightmares, loss of sleep, irritability, restlessness, concentration problems, diarrhea, nausea, and stomach aches. *Id.* at 569, 570. During his deposition, Hawkes acknowledged that the injuries he claimed to have suffered "were the result of verbal dealings with him," that none of the alleged injuries were the " 'result of anything which was done to [him] physically

by way of someone striking [him] or injuring [him] physically,' " and that he was "not claiming any physical harm, beatings or kickings or fisticuffs or any other abuse of a bodily nature." *Id.* at 570, 571.

The Eastern District affirmed the trial court's ruling granting summary judgment to Norfolk. *Id.* at 572. On the claim for negligent infliction of emotional distress, the court held that Hawkes could not recover under the *Gottshall* zone of danger test since he had not alleged that he sustained a physical impact as a result of a defendant's negligent conduct or had been threatened with or feared imminent physical harm. *Id.* at 571. The court then proceeded to hold that Hawkes could not recover on his claim for intentional infliction of emotional distress either, noting that while the United States Supreme Court has held that the intentional tort of physical assault falls within FELA's purview, the statute " 'has not been applied to any intentional torts lacking any physical dimension such as assault.' " *Id.* (quoting *Adkins v. Seaboard Sys. R.R.,* 821 F.2d 340, 341–42 (6th Cir.), *cert. denied,* 484 U.S. 963, 108 S.Ct. 452, 98 L.Ed.2d 392 (1987)).[3]

**2.** Although the court conducted a fairly substantial examination of *Gottshall* in *Bailey v. Norfolk & Western Railway Co.,* 942 S.W.2d 404 (Mo.App. E.D.1997), the Eastern District ultimately held that the zone of danger test adopted in *Gottshall* was inapplicable, since the injuries alleged by the plaintiff were "purely physical" in nature and the plaintiff's claim was "not for negligent infliction of emotional distress." *Id.* at 410, 411.

**3.** We observe that in a footnote, the Court in *Gottshall* stated: "We are not concerned here with the separate tort of intentional infliction of emotional distress." 512 U.S. at 541 n. 2, 114 S.Ct. at 2403 n. 2. Although Butler devotes several pages of his brief to a discussion of that tort, he does not even attempt to address the Eastern District's holding on the issue in *Hawkes* and does not refer us to a

single FELA case from any jurisdiction indicating that he could recover on that basis given the factual setting here. In any event, Burlington correctly observes that from its inception, Butler prosecuted this action before the trial court on a negligence theory and repeatedly referred to the "zone of danger" in his pleadings. Furthermore, in opposing Burlington's motion for summary judgment at the trial court level, Butler never even so much as hinted that the motion be denied on the grounds that he had pled a valid cause of action for intentional infliction of emotional distress under FELA. An appellant cannot attempt to avoid a grant of summary judgment by changing his theory of recovery on appeal. *Capobianco v. Pulitzer Publ'g Co.,* 812 S.W.2d 852, 860 (Mo.App. E.D.1991). We therefore decline to review Butler's new-found theory.

After the Eastern District's decisions in *Hawkes* and *Bailey*, the U.S. Supreme Court clarified the meaning of "physical impact" under *Gottshall* in *Metro–North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997). In *Buckley*, the Court held that under the *Gottshall* zone of danger test, the "physical impact" required to recover for negligently inflicted emotional distress under FELA does "not encompass every form of 'physical contact.'" *Id.* at 432, 117 S.Ct. at 2118. Rather, "physical impact" refers only to those contacts "that caused, or might have caused, immediate traumatic harm." *Id.* at 430, 117 S.Ct. at 2117. The Court also observed that "the general policy reasons to which *Gottshall* referred—[in explaining] why common-law courts have restricted recovery for emotional harm to cases falling within rather narrowly defined categories—militate against an expansive definition of 'physical impact' here." *Id.* at 433, 117 S.Ct. at 2118–19.

"*Buckley* thus restated the traditional rule that an event cannot constitute a physical impact, even if it entails contact, unless it has a physically harmful effect on the body[.]" *Nelson v. Metro–North Commuter R.R.*, 235 F.3d 101, 110 (2d Cir. 2000).[4] Accordingly, in cases decided after *Buckley*, courts have generally held that alleging a physical contact which does not entail physical harm or an imminent or immediate risk of physical harm is insufficient to support a claim for negligent infliction of emotional distress under FELA. *See, e.g., Higgins v. Metro–North R.R. Co.*, 143 F.Supp.2d 353, 359 (S.D.N.Y.2001), *aff'd*, 318 F.3d 422 (2d Cir.2003).[5]

We return now to the case *sub judice*. During his deposition, Butler acknowledged that no one at the event ever touched, threatened, or had "any physical contact" whatsoever with him, and that he received no physical injuries during the event. He has therefore failed, as a matter of law, to establish a physical impact as defined in *Hawkes*, *Gottshall* or *Buckley*. Furthermore, we find Butler's argument that his claim withstands summary judgment under the *Gottshall/Buckley* standard since his emotional injuries resulted from his presence in the zone of danger and a fear of imminent physical harm to himself at the hands of the two female "police officers" unpersuasive. Under the zone of danger test, "a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself, whereas a worker outside the zone will

**4.** Several courts reached the same conclusion well before *Buckley* was decided. *See, e.g., Bloom v. Consolidated Rail Corp.*, 41 F.3d 911, 916 (3d Cir.1994) (engineer who filed a claim for negligent infliction of emotional distress under FELA after the locomotive he was operating struck and killed a pedestrian did not sustain a physical impact because at all times he safely rode in the locomotive's cab and was not physically injured); *Grube v. Union Pac. R.R. Co.*, 256 Kan. 519, 886 P.2d 845, 851–52 (1994) (even though he was thrown against the console in the cab of the engine at the time of the collision, engineer operating train which collided with an automobile trapped upon a crossing did not sustain a physical impact, as it did not cause him any physical injury).

**5.** In his brief, Butler directs our attention to the recent case of *Norfolk & W. Ry. Co. v. Ayers*, 538 U.S. 135, 123 S.Ct. 1210, 155 L.Ed.2d 261 (2003). *Ayers*, however, is of little assistance to us, since it concerned the proper standard of proof for plaintiffs advancing "emotional distress claims brought on by a physical injury, for which pain and suffering recovery is permitted." 538 U.S. at 1212, 123 S.Ct. at 1218. To the extent *Ayers* does apply, it merely confirms that Butler's claim, like those in *Gottshall* and *Buckley*, is a "[s]tand-alone" emotional distress claim "not provoked by any physical injury, for which recovery is sharply circumscribed by the zone-of-danger test." *Id.*

not." *Gottshall,* 512 U.S at 556, 114 S.Ct. at 2410–11. By his own estimation, Butler was never closer than ten to fifteen feet away from the two women, and almost immediately after they entered the room, he knew or should have known that he was not the "Man of the Year" and was, therefore, not the subject of their attention. Moreover, Butler acknowledged during his deposition that he moved away from the women as soon as they entered the room and that he was not prevented from leaving the party at any time he wished. He was, therefore, not within the zone of danger of physical impact created by the presence of the two women "police officers." While Butler might possibly have had a fear of imminent physical harm to himself if *he,* rather than another party-goer, had been identified as the "Man of the Year" by the women and was subsequently "arrested," "handcuffed," and "beaten" by them, to recognize his claim under the actual circumstances presented in this case would be to stretch the federal common law zone of danger test well beyond the bounds laid down by the United States Supreme Court in *Gottshall* and *Buckley,* as well as to ignore the Court's repeated admonitions that a less restrictive standard for recovery on claims for negligent infliction of emotional distress under FELA raises "the potential for a flood of trivial suits, the possibility of fraudulent claims that are difficult for judges and juries to detect, and the specter of unlimited and unpredictable liability." *Gottshall,* 512 U.S. at 557, 114 S.Ct. at 2411; *see also Holliday v. Consol. Rail Corp.,* 914 F.2d 421, 427 (3d Cir.1990), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991) ("[If] a railroad employee demonstrating some possible negligence with psychological consequences will always present a jury question in a FELA action, the most attenuated claims could be advanced.")

We hold that Butler failed, as a matter of law, to satisfy the threshold requirements of the zone of danger test for a claim of negligent infliction of emotional distress under FELA. Burlington's motion for summary judgment was, therefore, correctly granted, and we affirm the judgment of the circuit court.

All concur.